NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| 610 CONVENIENCE STORE & DELI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Civ. No. 19-17309<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendant United States of America ("Defendant"). (ECF No. 20.) Plaintiff 610 Convenience Store ("Plaintiff" or the "Store") does not oppose. The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's Motion for Summary Judgment (ECF No. 20) is granted.

## BACKGROUND

**I.　Factual Background**

This case arises out of Plaintiff's alleged sale of a convenience store. Most of the facts, except those regarding the alleged sale itself, are undisputed. Plaintiff operates a convenience store and deli in Somerset, New Jersey. (Def.'s SUMF ¶ 2, ECF No. 20-2.) The Store is owned by Vinayak Management Corporation (the "Corporation"). (Administrative Record ("R.") 4–5, ECF Nos. 16-1, 17.) The Corporation was originally owned by Nitinkumar Vaidhya and

1

Bipinchandra Parekh (collectively, the "Prior Owners"). (*Id.*) Prior to 2012, Plaintiff participated in the Supplemental Nutrition Assistance Program ("SNAP"). (Def.'s SUMF ¶ 4.) SNAP provides electronic benefit transfer ("EBT") cards to low-income households who use the cards to purchase eligible food items from authorized retailers. 7 U.S.C. § 2016. The program is administered by the Food and Nutrition Service ("FNS") of the U.S. Department of Agriculture ("USDA"). 7 U.S.C. § 2020.

In 2012, Plaintiff was permanently disqualified from participation in SNAP as a retailer for trafficking food stamps. (R. 287–301.) The FNS disqualification letter sent to Plaintiff stated that "[i]n the event that you sell or transfer ownership of your store subsequent to disqualification, you will be subject to and liable for a [Transfer of Ownership Civil Money Penalty ("TOCMP")] as provided by SNAP regulations . . . ." (R. 34.) Plaintiff received the letter on November 8, 2012. (*Id.*)

Despite the letter, the Government contends that the Prior Owners sold the Store. (Def.'s Br. at 1–2, ECF No. 20-1.) The alleged sale took place in two transactions. First, on July 1, 2015, Vaidhya's daughter, Priyanka Vaidhya, purchased Parekh's 10-percent ownership in the Corporation through a stock purchase agreement. (R. 68–71.) Then, on September 27, 2017, Ms. Vaidhya purchased the outstanding 90 percent of the Corporation from her father for $105,000 through a Sale Agreement. (R. 101–06.) The Sale Agreement expressly mentions the Store's lease and states that Ms. Vaidhya agrees to be bound by its terms. (R. 102–03.) Ms. Vaidhya paid a down payment of $15,000, with the balance payable through a five-year promissory note. (R. 101–02.)

After the sale, Ms. Vaidhya completed federal and New Jersey tax documents on behalf of the Corporation. (R. 167–74, 241–58.) In the documents, she designated herself as the

2

Corporation's sole owner and officer. (*Id.*) She also notified the Store's landlord that she had become the Corporation's authorized actor and signatory and that her father had retired from the Corporation. (R. 156.) Ms. Vaidhya and the landlord executed an "Annexure to Lease" confirming that the landlord received the Corporation's notice of "change of director/owner," and noting that Ms. Vaidhya would "take all responsibility under [the] lease agreement." (R. 163.) Hers signature is on the annexure. (*Id.*) The lease was originally executed in 2011 for a three-year period and included a written option for two five-year extensions. (R. 157; Def.'s SUMF ¶ 12.) At the time of the Sale Agreement, the lease was in its first five-year extension period. (*Id.*)

In late 2018, Ms. Vaidhya re-applied for SNAP authorization for the Store. (R. 302.) Upon receipt of her application, the FNS wrote to her regarding the sale of the Corporation. (*Id.*) The FNS stated that it had reviewed the Sale Agreement in which Ms. Vaidhya bought 90 percent of the shares of the Corporation and inquired as to who owned the other 10 percent. (*Id.*) In response, Ms. Vaidhya wrote that she owned 100 percent of the Corporation's shares as of September 27, 2017. (R. 304.) Mr. Vaidhya also mailed a notarized affidavit indicating that he did not own any stock in the Corporation. (R. 305.) Based on these documents, the FNS Retail Operations Division found that the Prior Owners had sold or transferred the Store to Ms. Vaidhya and imposed a TOCMP in the amount of $55,000.00. (Def.'s SUMF ¶ 23.)

Plaintiff does not deny that the Sale Agreement was executed, but contends that no sale actually occurred. (Compl. ¶ 8.) Plaintiff states that after signing the agreement, "the landlord failed to renew or extend a lease to the business." (*Id.*) According to Plaintiff, the failure to extend the lease constituted a "mutual mistake of fact" that prevented the formation of a contract (*Id.* ¶ 9.) And because there was no contract, Plaintiff argues, there was no sale. (*Id.* ¶ 10.)

3

## II. Procedural History

Plaintiff appealed the imposition of the TOCMP to the FNS Administrative Review Branch, advancing the theory that no sale occurred. (R. 336–43.) The Administrative Review Branch issued a Final Agency Decision affirming the imposition of the penalty. (R. 350–56.) Plaintiff then filed an action in this Court. (ECF No. 1.) Plaintiff seeks reversal of the FNS decision and vacatur of the $55,000 penalty. (Compl. ¶ 10.) On June 26, 2020, Defendant filed a Motion for Summary Judgment. (ECF No. 20.) Plaintiff has not filed an Opposition. Defendant's Motion is presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

At the summary judgment stage, a district court considers the facts drawn from materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Summary

4

judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248–49. Similarly, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I.      Framework for Judicial Review

SNAP regulations provide that judicial review of administrative action "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). This provision "requires the district court to examine the entire range of issues raised and not merely to determine whether the administrative findings of the agency are supported by substantial evidence." *Freedman v. U.S. Dep't of Agric.*, 926 F.2d 252, 261 (3d Cir. 1991) (quoting *Modica v. U.S.*, 518 F.2d 374, 376 (5th Cir. 1975)). De novo review of an administrative decision is compatible with a summary-judgment disposition if no material facts are in dispute. *Id.*

Judicial review of a sanction imposed by the FNS requires a two-step inquiry. *In Suk Pak v. U.S. Dep't of Agric.*, 690 F. Supp. 322, 325 (M.D. Pa. 1987), *aff'd*, 853 F.2d 918 (3d Cir. 1988). "First, the court addresses the question of whether the violation of which the store is accused did occur." *Id.* at 325. The party challenging the administrative action has the burden of proving by a preponderance of the evidence that the charged SNAP violation did not occur. *Han v. Food and Nutrition Serv.*, 580 F. Supp. 1564, 1567 (D.N.J. 1984) (citing *Redmond v. U.S.*, 507 F.2d 1007 (5th Cir. 1975)). Second, if the violation did occur, "the court then considers whether the penalty imposed is valid." *In Suk Pak*, 690 F. Supp. at 325 (citation omitted). The court

evaluates the second question by determining whether the sanction was arbitrary and capricious. *Id.* (citing legislative history and gathering cases)*; see also Atl. Deli & Grocery v. U.S.*, 2011 WL 2038758, at *1 (D.N.J. May 23, 2011) (internal citation and quotation omitted) ("The standard for review for the imposition of a sanction under SNAP is whether the Secretary's action was arbitrary or capricious, *i.e.*, whether it was unwarranted in law or without justification in fact.").

**II.     The SNAP Violation**

The Court first addresses the question of whether the SNAP violation—the alleged sale of the Store—occurred. Summary judgment is appropriate on this issue if Plaintiff, as the party bearing the burden of proof at trial, has not come forth with opposition "from which a fact finder could reasonably find for Plaintiff, as required by Rule 56(e)." *Id.* at *4; *see also Freedman*, 926 F.2d at 261.

The Court finds that summary judgment is appropriate because Plaintiff has not presented any evidence to show that the sale did not occur. The Complaint lays out Plaintiff's view of the transaction between the Prior Owners and Ms. Vaidhya:

> The attempted Agreement to transfer the business during the period of disqualification was void ab initio since the landlord failed to renew or extend a lease to the business. Both parties -- Buyer and Seller of the business -- made a mutual mistake of fact and based on this mistake, the contract was not enforceable and was not executed.

(Compl. ¶¶ 9–10.) However, Plaintiff does not provide any documentation to sustain this theory. Plaintiff also did not provide documentary support during the FNS administrative appeal. (*See* R. 354.) Plaintiff's attorney did elaborate on the mutual mistake theory in a two-page letter to the FNS dated May 24, 2019. (R. 352.) The letter states that both parties "began the process of the purchase not realizing that landlord was not going to renew or extend the lease for the property where the business is located," which constituted the mutual mistake of fact. (R. 347.) However,

6

the FNS Administrative Review Officer found this letter unpersuasive because it provided "no evidence or other rationales" in support of its contentions. (R. 354.)

The Court agrees with this assessment. The letter contains contradictory statements describing the sale as completed and "void" but also characterizing it as an "attempted" transaction that "is not going to occur." (R. 346–47). The letter does not include sworn statements, documentary evidence about the lease, or any information concerning the landlord and his decisions. (*See id.*) The only parts of the letter that support a theory of mutual mistake are the attorney's statements, which are not evidence. *Cf. Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) ("[s]tatements made in briefs are not evidence of the facts asserted.").

Further, the Administrative Record contains persuasive evidence that Plaintiff did sell or transfer the Store via the sale of the Corporation. The Sale Agreement (R. 101–06) and stock purchase agreement (R. 68–71) indicate that the parties intended to enter into a sale. Ms. Vaidhya, the new owner, executed an annexure to the lease and filed taxes on behalf of the Corporation, listing herself as the sole shareholder. (R. 163, 167–174, 241–258.) When asked about the ownership of the Corporation when she reapplied for SNAP authorization, Ms. Vaidhya sent an email characterizing herself as the "100% owner . . . own[ing] 100% [of the] shares of Vinayak Management Corporation." (R. 303.) Mr. Vaidhya also sent the FNS a notarized affidavit stating that he is not a shareholder and was no longer involved in the Corporation as of the date of the Sale Agreement. (R. 305.) The Store continued operating after the sale: the FNS visited the Store as part of its investigation in 2018 and found that it "was in operation, was fully stocked with required staple foods, and was also selling lottery tickets, tobacco products, alcoholic beverages, and hot foods." (R. 354.) Other business records filed

with the Store's second SNAP application show that Ms. Vaidhya ran the Store well into the spring of 2019. (R. 238–86.)

These facts not only demonstrate that the Prior Owners sold the Store to Ms. Vaidhya, but also foreclose Plaintiff's argument that there was a mutual mistake of fact about the landlord's failure to renew or extend the lease. The doctrine of mutual mistake applies when a "mistake was mutual in that both parties were laboring under the same misapprehension as to [a] particular, essential fact" of the contract. *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 659 (N.J. 1989) (internal quotations omitted) (alteration in original). There must be "clear and convincing proof" that the original contract expressed the wrong view of the agreement. *Cent. State Bank v. Hudik–Ross Co.*, 396 A.2d 347, 351 (N.J. Super. Ct. App. Div. 1978). "Erroneous predictions of future events do not qualify as a mistake." *Consol. Rail Corp. v. Portlight, Inc.*, 188 F.3d 93, 97 (3d Cir. 1999) (internal citations omitted).

Plaintiff fails to show with "clear and convincing proof" that Ms. Vaidhya and the Prior Owners mistakenly believed that the Store's lease would be renewed. *See Cent. State Bank*, 396 A.2d at 351. The Sale Agreement provides that Ms. Vaidhya "shall be responsible for all of the obligations . . . as if the [she] originally signed the lease agreement," and includes no additional terms regarding the lease. (R. 213–14.) The lease was originally executed in 2011 for a three-year period and included a written option for two five-year extensions. (Def.'s SUMF ¶ 12). The terms of the lease define the extensions as optional: "If the option to extend the lease is exercised by both parties, the rent for five years shall be with 4% increase of the rent each year plus the difference of tax increase assessed by the Township for the next 5 years." (R. 157.) Ms. Vaidhya was aware of the terms of the lease because she signed a lease annexure in November, 2018. (R.

8

163.) She also mailed a copy of the lease to the FNS when she reapplied for SNAP authorization. (R. 268–75.)

Rather than a mistake of fact, the events at issue constitute an erroneous prediction of future events. *See Consol. Rail Corp.*, 188 F. Supp. at 97; *PNY Techs., Inc. v. Netac Tech. Co., Ltd.*, 2018 WL 3647221, at *3 (D.N.J. Aug. 1, 2018) ("Expectations or predictions about the future course of history are not facts in [the mistake of fact] context."); Restatement (Second) Contracts, § 151 cmt. a (1981) ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' . . ."). Ms. Vaidhya purchased the Corporation in full on September 27, 2017. (R. 68–71, 101–06.) At the time, the lease was in its first five-year extension period. (Def.'s SUMF ¶ 12.) Thus, the landlord's optional future renewal for the second five-year period was not an existing fact at the time of the Sale Agreement, but rather a future event that the parties could only predict. Simply because the parties believed that the landlord would renew the lease in the future does not mean that an otherwise valid Sale Agreement can be retroactively voided because that belief did not come to pass.

Accordingly, the Court concludes that summary judgment is appropriate on the issue of whether Plaintiff committed a SNAP violation because Plaintiff has introduced no evidence that could raise a question of material fact about whether the sale of the Store occurred.

## II.     Appropriateness of the Sanction

The Court next considers whether the sanction imposed by the FNS is appropriate. In assessing whether the sanction is valid, the Court will only set aside a penalty if it is arbitrary or capricious. *In Suk Pak*, 690 F. Supp. at 325; *Atl. Deli,* 2011 WL 2038758, at *1 (citation omitted). A penalty that is "rational, based on relevant factors, and within the agency's statutory authority" is not arbitrary and capricious. *Frisby v. U.S. Dep't of Hous. & Urb. Dev.*, 755 F.2d

1052, 1055 (3d Cir. 1985) (citation omitted). Plaintiff does not contend that the penalty imposed was unreasonable.

The penalty imposed by the FNS in this instance is reasonable. The FNS regulations outline the formula for calculating a TOCMP. The agency must calculate the penalty by (1) finding the average monthly food stamp redemptions of the disqualified store for the 12-month period ending with the month immediately preceding the charge, (2) multiplying that number by 10 percent, and (3) multiplying the resulting number by the number of months left on the disqualification period. 7 C.F.R. §§ 278.6(g)(1)–(3). If the disqualification is permanent, the penalty is double the penalty for a 10-year disqualification. 7 C.F.R. § 278.6(f)(1).

Here, the FNS followed the formula laid out in the regulations. The Administrative Record includes the calculations made by the Retailer Operations Division, which imposed the fine on Plaintiff. (R. 325–30.) The Division followed the formula laid out in 7 C.F.R. §§ 278.6(g) and arrived at a fine of $176,400.00. (R. 330.) However, this fine exceeded the $11,000 per violation statutory maximum in place at the time, so the Division reduced the penalty to $55,000 ($11,000 for each of the five violations). (*Id.*) The Court thus finds that the TOCMP imposed on Plaintiff was not arbitrary or capricious.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is granted. An appropriate Order will follow.


Date: <u>November 19, 2020</u>                                  */s/Anne E. Thompson*_____
                                                                                ANNE E. THOMPSON, U.S.D.J.